IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARIN HAEGER, | ) |
| Plaintiff, | ) No. 12 C 4990 |
| v. | ) |
| | ) Magistrate Judge |
| CAROLYN W. COLVIN,[1] | ) Maria Valdez |
| Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Carin Haeger's claim for Disability Insurance benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Haeger's motion for summary judgment [Doc. No. 15] is granted in part and denied in part. The Government's motion for summary judgment [Doc. No. 23] is denied. The Court finds that this matter should be remanded to the Commissioner of Social Security for further proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as defendant in this suit.

# BACKGROUND

I. **PROCEDURAL HISTORY**

Haeger originally applied for Title II Disability Insurance Benefits on October 15, 2008. (R. 234.) In her application, she alleged disability beginning January 1, 2003 due to temporomandibular joint dysfunction ("TMJ syndrome"), back and neck pain, myofacial pain, and headaches. (R. 270.) Haeger's initial application was denied on February 9, 2009, (R. 127–30,) and again on reconsideration on June 8, 2009. (R. 132–34.) Haeger filed a timely request for a hearing by an Administrative Law Judge ("ALJ"), which was held on August 16, 2010, with a supplemental hearing held on March 10, 2011. (R. 28, 72.) At the supplemental hearing, Haeger personally appeared and testified and was represented by counsel. (*Id.*) A vocational expert ("VE"), Lee Knutson, and a medical expert ("ME"), Dr. Ashok Jilhewar, also testified at the supplemental hearing. (*Id.*)

On April 29, 2011, the ALJ found that Haeger was not entitled to benefits because she was not disabled under the Social Security Act. (R. 19.) The Social Security Administration Appeals Council denied Haeger's request for review on April 20, 2012 (R. 1–5,) leaving the ALJ's decision as the final decision of the Commissioner of Social Security and therefore reviewable by the District Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND

### A. Claimant's History

Haeger was born on October 3, 1962. (R. 234.) She lives with her husband and their dog. (R. 280–81.) She completed high school and some college, and has received some special training in real estate. (R. 17, 275.) Prior to her injuries, Haeger worked as a paralegal from 1982 to 1997, and as a realtor from 1997 to 2002. (R. 271.)

### B. Testimony and Medical Evidence

#### 1. Claimant's Testimony

Haeger testified that she underwent jaw surgery at Louisiana State University in November, 2004. (R. 31, 33.) The surgery was done to replace a portion of her jaw with a titanium and plastic prosthesis. (R. 33.) Her ability to use her jaw has improved since the surgery was done, but she still feels significant pain above her ear, in her jaw, in her face, and in her neck. (R. 33–35.) Haeger sees a pain specialist once every two months. (R. 38.) She takes Fiorinal with codeine, Fioricet with codeine, and Zanaflex to alleviate her head and neck pain. (*Id.*) Haeger uses a Lidoderm patch for back pain. (*Id.*) She takes muscle relaxant medications as needed. (R. 37.)

Haeger's real estate license expired to 2007 and she is currently not working. (R. 35–36.) She has been unable to work since her jaw surgery in 2004. (R. 36.) Because she is not working, Haeger typically stays inside most of the day reading and doing puzzles. (*Id.*)

## 2. Medical evidence

Dr. Mary Jo Curran treated Haeger for pain between 1999 and 2007.[2] On June 30, 1999, she was treated with stereotactic decompression neurolysis of the medial branch nerve of the right posterior ramus at levels C2-C7. (R. 547.) The same day, she was given cervical facet injections at levels C2-C6. (R. 549.) Another stereotactic decompression neurolysis of the medial branch nerves on the left was administered August 25, 1999. (R. 544.) Haeger subsequently received a ganglionectomy to remove nerves on her right and left sides on September 29 and October 6, 1999, respectively (R. 538, 540.)

From October 1999 to February 2001, Haeger underwent a variety of nerve treatments intended to alleviate pain. These included spinal steroid injections, (R. 525, 527, 531, 534, 552, 560, 572, 578,) targeted ganglionectomies, (R. 527, 551, 567,) nerve blocks, (R. 562,) and percutaneous radiofrequency rhizotomies (R. 553–55, 557–58.) On October 5, 2000, Haeger reported that the range of motion in her left shoulder and facial pain had improved. (R. 508.) On February 21, 2001 — the last record of Haeger's treatment with Dr. Curran — Haeger underwent left maxillary neurolysis and a steroid injection into her maxillary nerve. (R. 552.)

---

[2] Records of Haeger's treatment with Dr. Curran after February 27, 2001 are missing from the record. She states that those records could not be found and efforts to contact Dr. Curran were fruitless. Haeger has submitted billing statements and prescription records in support of her continued contact with Dr. Curran. (R. 635–55, 669–751.)

Dr. Curran gave deposition testimony in a civil case concerning a car accident Haeger was involved in on April 18, 2002. (R. 581–634.) During the deposition, Dr. Curran responded to a question about Haeger's ability to be employed as a realtor or elsewhere, stating, "it's my opinion that if she can work it would be some specialized job where she's — can take days off at a time and that kind of thing." (R. 624–25.)

Although documentation of Haeger's TMJ surgery were destroyed in Hurricane Katrina, a letter from the treating facility shows that the procedure was performed in 2004. (R. 357.) No further evidence of the procedure or Haeger's recovery exists in the record.

Beginning on April 20, 2007, Haeger began to see Dr. Ira Goodman for pain management. (R. 456.) Records of that visit show limited range of motion in Haeger's neck, tenderness in her cervical facets, and limited range of motion and pain in her lower back. (R. 457.) As a result of continued pain in her neck and back, Haeger underwent a series of injections in the fall of 2007. (R. 386, 400, 440.) On January 18, 2008, she reported increased pain despite those injections. (R. 438.)

Haeger reported steady pain throughout 2008 with some alleviation through nerve radiofrequency treatment and injections. (R. 414, 429, 434.) On December 22, 2008, Dr. Goodman produced an "Arthritic Report," noting pain along Haeger's jaw, in her neck, along her occipital nerve, and in her lumbar spine. (R. 463.) He also noted Haeger's problems with diminished grip strength and her inability to sit or stand for more than 30 minutes at a time. (R. 463–64.) The same day, Dr. Goodman

5

completed a "Neurological Report" indicating that Haeger had lumbar facet arthropathy, cervical facet arthropathy, shoulder pain, myofascial pain syndrome, cervical radiculopathy, cervical discogenic pain, lumbar discogenic pain, and TMJ syndrome. (R. 466.) He reported that Haeger had 4/5 muscle strength at all of her major joints. (R. 467.)

On December 17, 2008, Haeger received a bilateral lumbar medial nerve block injection; she reported that the injection only provided relief from pain for two days. (R. 499.) During follow-ups with Dr. Goodman between 2009 and early 2010, Haeger reported continued pain in her head, face, back, and buttocks, with a 75 percent increase in pain noted on July 31, 2009. (R. 490, 493, 496.) On July 16, 2010, Dr. Goodman's notes indicate that Haeger was suffering from pain in her back, neck, bilateral shoulder, and head. (R. 661.)

On March 10, 2010, Dr. Goodman wrote a letter stating that Plaintiff had been in chronic pain since 1999. (R. 660.) The letter indicated that her pain level was a "9 and 3/4" out of 10. (*Id*.) Due to the level of her pain, Dr. Goodman suggested that Haeger could not write and that it would be difficult for her to travel. (*Id*.)

### 3. Medical expert's testimony

Based on his examination of Haeger's medical records, the ME testified that the medical record was deficient as to Haeger's symptoms because, aside from evidence of prescriptions for serious narcotic pain relievers, no documents showing the effects of pain associated with Haeger's ailments could be found in the record.

6

(R. 40.) Although the ME was informed that records regarding Haeger's jaw joint replacement surgery were lost in Hurricane Katrina, he opined that absent additional records of post-operative complications or ongoing pain after her surgery, there was insufficient evidence in the record to show that Haeger's TMJ syndrome was a severe impairment at any time after 1999. (R. 40–41.) The ME concluded that evidence in the record did show that Haeger's facet joint arthritis of the cervical spine was a severe impairment. (R. 44.)

Due to Haeger's arthritis, the ME stated that her capacity to function in a work setting would be limited and she should be limited sedentary work. (R. 46.) His suggested limitations on Haeger's abilities were largely based on the pain medications in the record. (R. 47.)

### 4. Vocational expert's testimony

The VE testified concerning Haeger's ability to work based the record, concluding that her past relevant work experience provided her with some transferable skills, including basic computer skills which would allow her to work as a secretary or a data clerk. (R. 59.) A person of Haeger's age, education, work experience, and skill set could perform sedentary jobs such as working as an order food and beverage clerk. (R. 60.) Haeger could also work in semiskilled positions such as assembly. (R. 61.) The ME 's suggested limitations on Haeger's ability to perform difficult movements such as climbing would have no impact on whether she could work in sedentary jobs. (*Id.*)

On examination by Haeger's attorney, the VE stated that a person who was off task 25 percent of the time due to pain would not be able to perform any job. (R. 62.) In order to maintain a position, a person would have to be on task 85 percent of the time on a consistent basis. (R. 63.) As a result, hypothetical limitations posed by Haeger's attorney wherein a person would be off task for 25 percent of the day for two or three days a week would mean that person would not be employable. (*Id.*)

### C. ALJ Decision

The ALJ found that Haeger had not engaged in substantial gainful activity since her initial onset date of January 1, 2003. (R. 14.) He also found that Haeger suffered from severe impairments, including TMJ syndrome, cervical radiculitis, and facet joint arthritis of the cervical spine. (*Id.*) The ALJ concluded that none of Haeger's impairments met or equaled a determinable impairment listed in 20 C.F.R. Part 404. (R. 15.)

The ALJ next determined that Haeger had the RFC to perform sedentary work, provided that she did not have to climb ladders, ropes, or scaffolds. (*Id.*) Although Haeger stated during her hearing that the pain in her back and neck limits her ability to concentrate, the ALJ found that her ability to focus on activities such as televisions shows and puzzles at home, in addition her ability to appropriately participate in her disability hearing, belied her statements concerning the disruptive nature of her ailments. (R. 15–16.) The ALJ further found that although Haeger's impairments could reasonably be expected to cause her symptoms, "[Haeger's] statements concerning the intensity, persistence, and

8

limiting effects of her symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC assessment]." (R. 16.) His basis for this conclusion was a lack of medical documentation for Haeger's difficulties with TMJ syndrome following her joint replacement surgery, her ability to control pain associated with her back problems through injections and other medication, and conservative treatment for each of her disabling conditions. (R. 16–17.) Finally, the ALJ relied on the ME's testimony that the information contained in the medical record was insufficient to establish a firm understanding of the degree of Haeger's pain and the related inference that claimant's physical condition and medication regimen would limit her to sedentary work. (R. 17.) The ALJ placed especially heavy reliance on the ME's testimony, stating that the record did not contain medical source opinion predating her March 10, 2010 date of last insured that described her physical functional abilities. (*Id.*)

The ALJ found that Haeger was unable to perform any of her past relevant work. (*Id.*) However, based on his RFC finding, the ALJ concluded that there were a significant number of available jobs in the national economy that Haeger could perform. (R. 18.) Representative jobs included secretary, data entry clerk, and food and beverage order clerk. (*Id.*) As a result, the ALJ found that Haeger had not been under a disability from the time of her alleged initial onset date through the decision and therefore denied her claim for benefits. (R. 19.)

# DISCUSSION

## I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir.1992). A negative answer at any step, other than at step 3, precludes a finding of disability. Id. The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its own judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634

(7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Haeger makes four arguments in support of her appeal from the ALJ's decision denying her benefits: (1) the ALJ should not have relied upon the opinion of the ME to reach his conclusion; (2) the ALJ did not assign adequate weight to Haeger's treating physician, Dr. Curran; (3) the ALJ's credibility assessment was flawed; and (4) the ALJ issued an erroneous RFC assessment. Each of these arguments are addressed in turn

#### A. <u>Medical Expert Testimony</u>

Haeger argues that the ALJ's reliance on the ME's testimony was improper because there was insufficient evidence to support the ME's conclusion that Haeger could perform sedentary work and because the conclusion was based on the side

effects of Haeger's medications. Additionally, she asserts that the ALJ failed to specify how much weight was given to the ME's opinion in accordance with 20 C.F.R. 404.1527, and should therefore be reversed.

The ALJ gave "great weight" to the ME's opinion that Haeger was able to perform sedentary work, (R. 17,) even as the ME stated that the available record did not provide sufficient information for him to reach a conclusion concerning Haeger's medical condition. (R. 39.)[3] The ME drew his conclusions about Haeger's ability to work were drawn only from her prescriptions and testimony. (R. 17.)

The ALJ erred in affording the ME's opinion substantial weight. Based on the record, the ME lacked a reasonable basis for his conclusions, as shown by the scant evidentiary support he used to explain Haeger's work limitations. In offering his opinion as to what work Haeger could complete, the ME ignored evidence of Haeger's ailments other than TMJ syndrome, Dr. Curran's opinion regarding her ability to work, and a good deal of Haeger's testimony during the hearing. Thus, the ME's opinion as to the totality of Haeger's ailments was of limited utility. While the ALJ might have resolved this error by cabining his reliance on the ME to the question of how Haeger's prescriptions would affect her RFC, he did not take this step. Furthermore, given that the ME's testimony was the only expert medical opinion that the ALJ relied upon, the error was sufficiently prejudicial to justify remand.

---

[3] When asked about possible treatment for facial pain associated with Haeger's TMJ, the ME responded "I'm guessing. You know my guess is as good as yours." (R. 48.)

On remand, the ALJ should explicitly state what portions of the ME's testimony he credits in drawing conclusions about Haeger's capacity to work. While the ALJ's failure to comply with 20 C.F.R. § 404.1527 by not specifying how much weight was given to the ME's opinion does not alone require remand, the ALJ should make an effort to use those guidelines in describing what evidence supports the ME's conclusions.

B. **Dr. Curran's Opinion**

Haeger next complains that the ALJ should have given greater weight to Dr. Curran's 2002 deposition testimony, which stated Haeger was unable to work without being allowed to take days off for pain. Haeger argues that Dr. Curran's opinion directly contradicts the ALJ's note that "there is no documented medical source opinion in the record as to claimant's physical functional abilities prior to the date of last insured . . . ." (R. 17.)

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, [and] what [a claimant] can still do despite impairment(s)," among others. 20 C.F.R. 404.1527(a)(2). An ALJ may not disregard the opinion of a treating physician without explanation. *Martinez v. Astrue,* 630 F.3d 693, 698 (7th Cir. 2011). Here, the ALJ simply overlooked Dr. Curran's opinion — which was based on "a reasonable degree of medical certainty" — that Haeger required a specialized job that would allow her to take days off at a time. (R. 624–625.) Dr. Curran's

14

deposition testimony belies the ALJ's conclusion that Haeger could work in a range of sedentary employment, and the ALJ should have weighed the testimony in determining what jobs Haeger could perform.

The Commissioner responds that Dr. Curran's testimony is irrelevant both because it was given in 2002, one year before Haeger alleged disability, and because it was based on Haeger's subjective complaints. However, failure to consider Dr. Curran's opinion could have prejudiced Haeger because it was the only relevant opinion evidence from a treating physician available to the ALJ discussing limitations on her ability to work. Although Haeger did not claim disability until later, a statement from the physician who treated her before and during the alleged period of disability that she could not work every day due to her ailments should have been considered. Such an opinion certainly bears on continuing limitations later in the record, especially where other evidence of the severity of Haeger's ailments was lost due to extenuating circumstances.

The Commissioner's argument that Dr. Curran's testimony was based only on Haeger's subjective complaints is incorrect. The record indicates that Dr. Curran treated Haeger for several years prior to the deposition. Furthermore, other sections of the deposition transcript show that Dr. Curran answered questions regarding pain treatments Haeger underwent, including ganglionectomies and epidural injections. (R. 622–624.) Finally, Dr. Curran's statement that her testimony was delivered based on a reasonable degree of medical certainty suggests that her testimony was founded on more than Haeger's uncorroborated complaints of pain.

15

The ALJ's failure to appropriately weigh an opinion of Haeger's treating physician is sufficient grounds for remand. *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011); *Punzio v. Astrue*, 630 F.3d 704, 710–11 (7th Cir. 2011). The ALJ is instructed to consider Dr. Curran's 2002 opinion while reexamining Haeger's disability claim.

### C. Credibility Assessment

Haeger disputes the ALJ's use of "boilerplate" language[4] to conclude that Haeger's testimony was not credible. Indeed, the Seventh Circuit has repeatedly taken issue with the use of such language, insofar as it implies that an ALJ has jumped to a final conclusion regarding a claimant's ability to work and then determined that a claimant's testimony is not credible based on the desired end. *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see also Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012).

An ALJ's credibility determination is entitled to substantial deference on review unless it is patently wrong and unsupported by the record. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). Reviewing courts should avoid disturbing an ALJ's credibility determination so long as it is reasonable and has some evidentiary support. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). "However, an ALJ must

---

[4] "After careful consideration of the evidence," the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment." (R. 16.)

16

adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013). "A failure to do so could . . . be grounds for reversal." *Id*.

In the Seventh Circuit, the use of boilerplate language alone is insufficient to justify remand where an ALJ adequately explains how he reached his conclusion regarding a claimant's credibility. *See Carter v. Astrue*, 413 F. App'x 899, 905–06 (7th Cir. 2011). Here, the ALJ explained at length what evidence he found to be inconsistent with Haeger's statements regarding her symptoms. For example, the ALJ found Haeger's ability to watch television, read magazines, and do puzzles contradicted her claims that she was unable to concentrate due to extreme pain. (R. 15.) He also concluded that Haeger's behavior during the hearing did not suggest that she was in significant pain and noted Haeger's struggles to answer questions about whether her headaches were related to her TMJ syndrome. (R. 15–16.) An ALJ is permitted to assess evidence which is inconsistent with a claimant's subjective complaints in order formulate a credibility assessment. *See Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir. 1994.) (ability to perform daily activities undermined claimant's descriptions of severe pain); *Herr*, 912 F.2d at 181 (claimant's daily activities conflicted with complaints of fatigue). An ALJ may also consider a claimant's behavior during a hearing while assessing credibility. *See*

17

*Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (crediting the ALJ's ability to observe a claimant's "demeanor, behavior, attitude and other characteristics . . . consistent with the general bearing of someone who is experiencing severe pain.")

Because the ALJ adequately explained the reasoning behind his assessment of Haeger's credibility, his use of boilerplate language does not require remand.

### D. <u>Haeger's RFC</u>

Finally, Haeger argues that the ALJ's assessment of her RFC was flawed because it did not account for the side effects of her medications. She claims that the ALJ's RFC findings would have been more restrictive if ALJ had considered the type, dosage, and side effects of her medications, as required by SSR 96–7p, especially with respect to Haeger's ability to concentrate.

The record shows that the ALJ did give sufficient attention to Haeger's medications. Most notably, the ALJ's statement that she could not climb ropes, ladders, or scaffolds was based on the side effects of her medications. This conclusion, in addition to citations to the ME's testimony focusing on available records showing Haeger's prescriptions, indicates that the ALJ gave adequate consideration to how Haeger might be limited by those medications.

Haeger's claim that the ALJ should have specifically considered how the side effects of her medications limited her ability to concentrate is unpersuasive. While Haeger reported problems with "thinking" to Dr. Goodman, nothing in the record indicates that those problems were a result of her medications. Furthermore, while the ME did answer that the medications Haeger takes for pain "could have"

18

interfered with her ability to concentrate, his next statement was that he did not know whether that was the case. (R. 52.) Where the record does not contain evidence that a claimant is limited by the side effects of her medications, "it would be speculation to assume that [the claimant] automatically suffers from those side effects." *Schaaf v. Astrue*, 602 F.3d 869, 876 (7th Cir. 2010). Thus, the ALJ's RFC determination was not erroneous.

## CONCLUSION

For the foregoing reasons, Plaintiff Carin Haeger's motion for summary judgment [Doc. No. 15] is granted in part and denied in part. The Government's motion for summary judgment [Doc. No. 23] is denied. The Court finds that this matter should be remanded to the Commissioner of Social Security for further proceedings consistent with this order.

**SO ORDERED.**  **ENTERED:**

**DATE:** **May 19, 2014**

_____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**